## INDUSTRIAL COMMISSION v GILLARD

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12083.   Decided Oct 26, 1931

Gilbert Bettman, Columbus, Arthur Krause and Raymond D. Metzner, Cleveland, for plaintiff in error.

Friebolin and Byers, Cleveland, for defendant in error.

VICKERY, J.

That decedent had a weak heart and was troubled with sclerosis, I suppose is undeniable, but apparently he had worked regularly and had not been ill up to the time of his death.

One of the questions raised is that there was no evidence to go to the jury that the death was caused in any way by accident, but that it was a natural death caused from natural causes in no way connected with his employment.

We do not think the record bears that theory out. It surely is the law of this state that if a person is not perfect and by overstrain or extra work the cause existing in the system is made operative or the hidden defects which result in the death of the party who would be entitled to benefits are accellerated, the injury is compensable, even though had the person been sound in every particular, the strain would not have been sufficient to cause the death of the party or any serious physical injury. We think the law is that even though a person is not perfect that if the overexertion or extra work that one is not accustomed to precipitates or brings about the condition which otherwise would not have happened, it is compensable, and we find there is evidence in this record which would warrant the jury in coming to the conclusion upon that question in favor of the claimant against the Industrial Commission.

So far as the first contention is concerned we do not feel called upon to disturb the finding, and if that were all there was in the case, we should affirm the judgment. But there is a much more serious fault to be found with this record in the trial of the lawsuit, and the majority of the court feels that it is so serious and so contrary to the authorized practice that we cannot let it go by, and that is, while it ought not to be characterized so harshly as misconduct of counsel, yet in a measure it is misconduct of counsel and was so denominated in the briefs and in the petition in error.

Very able counsel for the claimant in the court below was not quite satisfied with his own argument in the case and after the evidence had all been submitted he did not confine his remarks to argument to the jury, but during the course of his argument spoke about the fairness or the unfairness of the Industrial Commission to the claimants for compensation in cases, and to illustrate that he read to the jury over the objection of counsel for the Industrial Commission from one of the opinions written by the late Judge Sullivan of this court. The excerpt from his argument and the manner in which it was given is as follows:

"He (counsel for the Industrial Commission) says the Industrial Commission want to be fair, and I give them credit for to be fair, but the books are full of cases where courts of justice have ruled otherwise than has the Industrial Commission. So we know that they are not always right. This law, under the law, is proposed to be and is intended to be fairly and liberally construed in the interests of the men who create the fund. I can't state the law on that subject as well as I find it stated in a case decided by the Court of Appeals of Cuyahoga County. They say this — —

"Mr. Blaugrund: I object to reading it to the jury.

"The Court: It is discretionary with the Court.

"Mr. Blaugrund: Exception.

"Mr. Byers: (Reading) 'The remedies provided in the Workmen's Compensation Act for the benefit of injured parties must be interpreted with the utmost liberality.' Citing cases decided by the Supreme Court: 'Roma v The Industrial Commission, 97 Oh St 247, 119 NE 461; Industrial Commission v Weygandt, 102 Oh St, page 1.'

"Mr. Blaugrund: For the purpose of the record I want to object to that.

"Mr. Byers: They go on to say—'it will be conceded, we think, that the provisions of the Workmen's Compensation Act are wide and humane, and that they were enacted for the purpose of furnishing the means of support for the widows, children and dependents of employes who might lose their lives while engaged in some labor or work in an honest endeavor to obtain the means of support of those near and dear to them.' Now, do you think, Mr. Blaugrund, that the Industrial Commission considered this case and decided it in the law as you will find it by the Court of Appeals of this County?"

Then again he said further along in his argument:

"But the only question in this case, will be whether you can from the evidence, from the facts which you have before you, reach a conclusion as to whether Albert Gillard died as a result of hemorrhage produced by some unusual exertion which took place while he was employed by the E. and H. Laundry Company. In the book I have the Court says here that the law should be liberally applied. I think in the light of that doctrine of law as laid down by the Court that it is fair to assume that he died as a result of this exertion."

Now it will be seen that the vice of this is that the application of the doctrine read to the jury from Judge Sullivan's opinion was the application of the principle of

liberal construction. While this court and other courts have many times held that the **law** should be liberally construed in favor of the claimant and this court adheres to that doctrine now, yet the application that the attorney made from those authorities was that the **evidence** should be liberally construed as well, and if the excerpt from the opinion of Judge Sullivan is read with this in mind, one can see how utterly prejudicial such reading from the law book to the jury would be. We cannot imagine anything more prejudicial than that. The majority of this court thinks that that was such error as would make it dangerous to sustain this verdict, which otherwise we should undoubtedly sustain; that the practice of reading law to the jury is a wrong practice and ought not and should not be tolerated.

It is true the court told the jury it should take its law from the court and the dissenting member of the court feels that the court had cured whatever error there was, by his charge. A close examination of the charge will show that it was not cured. The court, of course, did say that the jury should take its law from the court and not from the lawyers. The trouble is the application that was made of the opinion of Judge Sullivan was that the **facts** should be liberally construed and that line of argument should have been stopped by the court; and inasmuch as it was objected to and the objection overruled, the majority of the court thinks it was erroneous and that it was not cured by the charge of the court, and for that reason the judgment of the court below will be reversed and the cause remanded for a new trial.

WEYGANDT, J, concurs.
LEVINE, J, dissents.